UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MAURICE D. BRADLEY, KENNETH R. EDWARDS, AMBER NEUMANN, MARK KAUFMAN, JOHN OSICK, JODI WITTROCK, CURTIS SIMILTON, RYAN HAGARTY, THOMAS HARNIK, WILLIAM FISHER, RICHARD STENQUIST and ANDREW R. SMITH, individually and on behalf of others similarly situated, <br><br> Plaintiffs <br><br> vs. <br><br> MENARD, INC., <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) **CLASS ACTION COMPLAINT** ) ) **COLLECTIVE ACTION PURSUANT TO** ) **29 USC § 216(b)** ) ) CASE NO. 2:17-cv-00165-JMS-MJD ) ) ) ) ) |

***PLAINTIFFS' MOTION AND SUPPORTING MEMORANDUM OF LAW SEEKING FINAL APPROVAL OF CLASS ACTION AND FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT***

**I.   INTRODUCTION**

Plaintiffs Maurice D. Bradley ("Bradley"), Kenneth R. Edwards ("Edwards"), Amber Neumann ("Neumann"), Mark Kaufman ("Kaufman"), John Osick ("Osick"), Jodi Wittrock ("Wittrock"), Curtis Similton ("Similton"), Ryan Hagarty ("Hagarty"), Thomas Harnik ("Harnik"), William Fisher ("Fisher"), Richard Stenquist ("Stenquist") and Andrew R. Smith ("Smith") (collectively, "Plaintiffs") assert claims which relate to the payment of wages to employees of Defendant Menard, Inc. ("Defendant," the "Company," or "Menard, Inc.") from as early as January 31, 2013 (or as late as January 31, 2016, depending upon the applicable state law) to April 22, 2018 (the last date prior to Menard, Inc.'s change in its policy).  Specifically, the class includes non-exempt, hourly-paid persons employed by Defendant from as early as

1

January 31, 2013 (or as late as January 31, 2016, depending upon the applicable state law) to April 22, 2018 who may have been subject to a practice of treating certain recorded breaks of twenty minutes or less as unpaid time, which resulted in the underpayment of wages. This Motion seeks final approval of the Class Action Settlement Agreement and Release (the "Class Action Settlement Agreement"), which was granted preliminary approval on September 28, 2018 [Filing No. 115.]. Consistent with the Court's February 13, 2019 Order [Filing No. 142.], this motion seeks final approval of the parties Rule 23 Class and FLSA Collective Action settlement agreement, approval of incentive awards to certain plaintiffs, and provides a Plan of Allocation regarding the common fund created by the parties' settlement.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The original Plaintiff, Maurice D. Bradley filed the original action on April 13, 2017 in the United States District Court for the Southern District of Indiana, Case No. 2:17-cv-00165-JMS-MPB. That original complaint is being amended, with Defendant's written consent, to add representative plaintiffs in all states in which Menard, Inc. has employed workers at Midwest Manufacturing facilities. All are similarly situated, non-exempt, hourly paid employees who recorded breaks in time of twenty minutes or less during their Menard, Inc. work days and were not paid wages for that time.

Specifically, Plaintiffs alleged that Menard, Inc. utilized a compensation scheme whereby it only pays its non-exempt, hourly-paid workers for time recorded on an electronic time clock system. Plaintiffs alleged that Menard, Inc. has a policy and practice whereby it requires its hourly-paid employees to clock out for time spent in short breaks of twenty minutes or less (e.g., bathroom breaks, drink breaks, cigarette breaks, etc...) and that, in violation of the FLSA, see 29 CFR § 785.18, Menard, Inc. was not paying its employees for some or all of these recorded

breaks of twenty minutes or less. Finally, Plaintiffs alleged that Menard, Inc. has a scheme whereby its employees would only be paid wages again after clocking back in at the end of the recorded, unpaid short break of twenty minutes or less.

Bradley, the original plaintiff, will serve as the representative of all opt-in plaintiffs who worked for Menard, Inc.'s Midwest Manufacturing division in a nationwide FLSA collective action. Additionally, pursuant to principles of supplemental jurisdiction, Bradley will pursue his own individual claim to recover wages for all unpaid breaks of twenty minutes or less under the Indiana Wage Claims Statute, I.C. 22-2-9.

Edwards will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Indiana location. That class action claim will arise under the Indiana Wage Payment Statute. I.C. 22-2-5. Neumann will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Iowa location. That class action claim will arise under the Iowa Wage Payment Collection Law, Iowa Code Chapter § 91A.

Kaufman will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Illinois location. That class action claim will arise under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq*., and the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* Osick will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Missouri location. That class action claim will arise under the Missouri Revised Statute §290.505. Wittrock will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees

who worked for the company at its Minnesota location. That class action claim will arise under the Minnesota Payment of Wages Act. Similton will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Michigan location. That class action claim will arise under the Michigan overtime compensation statute, MCLS § 408.414a. Hagarty will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its North Dakota location. That class action claim will arise under the North Dakota Wage Collection Act, NDCC 34-14. Harnik will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Nebraska location. That class action claim will arise under the Nebraska Wage Payment and Collection Act, R.R.S. Neb. §§ 48-1228-1232. Fisher will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Ohio location. That class action claim will arise under the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03. Stenquist will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its South Dakota location. That class action claim will arise under the South Dakota wage statute. SDCL § 60-11-7. Finally, Smith will serve as the Rule 23 class representative for a sub-class of Menard, Inc.'s Midwest Manufacturing division employees who worked for the company at its Wisconsin locations. That class action claim will arise under the Wisconsin overtime compensation law, Wisconsin Statute § 103.01-03 and 103.74 and Wisconsin Admin. Code DWD 272 and 274 (particularly, DWD 274.03).

During the course of litigation, the Parties exchanged information regarding Menard, Inc.'s timekeeping practices and break policies affecting hourly-paid employees at its Midwest Manufacturing facilities. Once they received this information, Plaintiffs were capable of projecting the damages sought by the overall class and each class member, and therefore, no additional factual discovery was necessary to evaluate the matter for settlement purposes.

The parties participated in a formal mediation in Columbus, Ohio on March 6, 2018 conducted by former U.S. District Court Judge Richard B. McQuade (Northern District of Ohio). The parties had exchanged a significant number of class-wide time clock and pay roll records that permitted the parties to project potential damages prior to the mediation. Although Menard, Inc. denies any liability, to avoid protracted litigation and expenses, the Parties, following arms'-length settlement negotiations, reached a settlement. The settlement has taken some additional time to finalize, because the parties had to find opt in plaintiffs from different states with Midwest Manufacturing facilities to agree to serve as Rule 23 class representatives in order to make the settlement agreement more effective and fair. That goal was accomplished in a few short months.

The preliminarily approved Class Action Settlement Agreement required the creation of the following settlement classes for the purpose of effectuating the agreement.

1. <u>FLSA Collective</u>. The term "FLSA Collective" means any and all current and former Team Members or Temporary Employees, but excluding managers, who elected to participate in this Agreement and submitted a valid Claim Form before the Response Deadline, and who are or were employed by Defendant at a Midwest Manufacturing facility during the FLSA Class Period. The term "FLSA Collective Period" as used herein means the period from

April 13, 2015 through the date Defendant issues the Revised Policy, but no later than April 23, 2018.

2. <u>Illinois Settlement Class</u>. The term "Illinois Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Illinois during the Illinois Class Period. The Class Representative for this Class is Mark Kaufman. The term "Illinois Class Period" means the period of time from January 31, 2013, through the Final Approval.

3. <u>Indiana Settlement Class</u>. The term "Indiana Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Indiana during the Indiana Class Period. The Class Representatives for this Class are the Named Plaintiffs.  The term "Indiana Class Period" means the period of time from January 31, 2016, through Final Approval.

4. <u>Iowa Settlement Class</u>. The term "Iowa Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Iowa during the Iowa Class Period. The Class Representative for this Class is Amber Neumann.  The term "Iowa Class Period" means the period of time from January 31, 2016, through Final Approval.

5. <u>Michigan Settlement Class</u>. The term "Michigan Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Michigan during the Michigan Class Period. The Class Representative for this Class is Curtis

Similton. The term "Michigan Class Period" means the period of time from January 31, 2015, through Final Approval.

6. <u>Minnesota Settlement Class</u>. The term "Minnesota Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Minnesota during the Minnesota Class Period. The Class Representative for this Class is Jodi Wittrock. The term "Minnesota Class Period" means the period of time from January 31, 2015, through Final Approval.

7. <u>Missouri Settlement Class</u>. The term "Missouri Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Missouri during the Missouri Class Period. The Class Representative for this Class is John Osick. The term "Missouri Class Period" means the period of time from January 31, 2016, through Final Approval.

8. <u>Nebraska Settlement Class</u>. The term "Nebraska Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Nebraska during the Nebraska Class Period. The Class Representative for this Class is Thomas Harnik. The term "Nebraska Class Period" means the period of time from January 31, 2014, through Final Approval.

9. <u>North Dakota Settlement Class</u>. The term "North Dakota Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the

7

state of North Dakota during the North Dakota Class Period. The Class Representative for this Class is Ryan Hagarty. The term "North Dakota Class Period" means the period of time from January 31, 2016, through Final Approval.

10. <u>Ohio Settlement Class</u>. The term "Ohio Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Ohio during the Ohio Class Period. The Class Representative for this Class is William Fisher. The term "Ohio Class Period" means the period of time from January 31, 2016, through Final Approval.

11. <u>South Dakota Settlement Class</u>. The term "South Dakota Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of South Dakota during the South Dakota Class Period. The Class Representative for this Class is Richard Stenquist. The term "South Dakota Class Period" means the period of time from January 31, 2016, through Final Approval.

12. <u>Wisconsin Settlement Class</u>. The term "Wisconsin Settlement Class" means any and all current and former Team Members or Temporary Employees, but excluding managers, who are or were employed by Defendant at a Midwest Manufacturing facility in the state of Wisconsin during the Wisconsin Class Period. The Class Representative for this Class is Andrew R. Smith. The term "Wisconsin Class Period" means the period of time from January 31, 2016, through Final Approval.

If the Class Action Settlement Agreement is approved, each class member will receive an amount greater than his/her actual wage loss and a significant additional amount toward a liquidated damage that Plaintiffs believe could be recovered in this litigation. Each member of

the settlement classes will receive a proportional, *pro rata* share of the amount Defendant has agreed to pay the class.

### a. Class Participation Following Notice of the Class Action Settlement

Consistent with the Court's orders, Notice of the Class Action and FLSA Collective Action Settlement were mailed to Rule 23 class members and potential FLSA opt-in plaintiffs on January 4, 2019. Claim Forms were mailed as part of that Notice. As the Court ordered [Filing No. 142.], the class was provided Notice that any objections or opt out notices were due by no later than March 1, 2019. Finally, Claim Forms (opting in to the FLSA collective action) were due on or before March 4, 2019.

Through February 13, 2019, Eight Hundred Sixty-Eight Claim Forms have been returned by class members seeking payment under the FLSA collective action portion of the settlement. Those claim forms are being filed with the Court as received. Additional claim forms are still arriving and it appears the number of claims will approach One Thousand.

Through February 13, 2019, only six (6) individuals have filed notice with the Court and/or sent notice to Plaintiffs' counsel indicating that he/she wishes to opt out of the Rule 23 class action settlement.

To the undersigned's knowledge and information, no one has filed any objection to the settlement itself, to the proposed payments to class members, to the proposed attorney's fees and expense reimbursements or to the proposed service awards to lead plaintiffs.

### b. Plan of Allocation

Based upon the parties' Class Action Settlement Agreement, preliminarily approved on September 28, 2018 [Filing No. 115.], the class action common fund shall be allocated as follows, based upon current opt in and opt out claims filed:

|  |  |
|---|---|
| OVERALL SETTLEMENT AMOUNT - | $1,500,000.00 |
| Less Agreed Upon Attorney's Fees – | $ 500,000.00 |
| Less Agreed Upon Costs and Expenses – | $ 59,211.20 |
| Net Settlement Fund – | $ 940,788.80 |
| Less Agreed Upon Incentive Awards – | $ 30,000.00 |
| Adjusted Net Settlement – | $ 910,788.80 |
| a. Rule 23 payments on week by week basis to 5,549 class members | $ 455,394.40 |
| b. Fund to pay FLSA collective action payments to class member who filed Claim Forms at $1.31 per work week (Currently 868 claimants) (Unclaimed funds shall be paid as *cy pres* award pursuant to Settlement Agreement) | $ 455,394.40 |

**c. Incentive/Service Payments to Class Representatives**

The Court preliminarily approved Service Payments to the Named Plaintiffs, in recognition of the time they spent and the risk they undertook in prosecuting this lawsuit, and their service to the Settlement Class. Those Service Payments are as follows:

A payment of $10,000.00 to Plaintiff Maurice D. Bradley. Mr. Bradley is the original Plaintiff and the Representative Plaintiff in the FLSA Collective Action. Mr. Bradley participated in all stages of the litigation and in negotiation of this settlement. Without Mr. Bradley, no class member would have made a recovery.

A payment of $10,000.00 to Plaintiff Kenneth R. Edwards. Mr. Edwards is the Indiana Rule 23 Class Representative, but Mr. Edwards was the person who agreed to intervene in Mr. Bradley's case and initially preserved the Rule 23 claims under the Indiana Wage Payment

10

Statute. Mr. Bradley was involuntarily terminated, so Mr. Edwards was needed to represent Rule 23 class members and to preserve class-wide claims under the Indiana Wage Payment Statute for Indiana class members. Without Mr. Edwards, the Rule 23 claims would not have been preserved and the case would have only been pursued as a FLSA collective action.

A payment of $1,000.00 to Plaintiff Mark Kaufman. Without Mr. Kaufman's service, Illinois state law claims for Illinois class members would not have succeeded.

A payment of $1,000.00 to Plaintiff Amber Neumann. Without Ms. Neumann's service, Iowa state law claims for Iowa class members would not have succeeded.

A payment of $1,000.00 to Plaintiff Curtis Similton. Without Mr. Similton's service, Michigan state law claims for Michigan class members would not have succeeded.

A payment of $1,000.00 to Plaintiff Jodi Wittrock. Without Ms. Wittrock's service, Minnesota state law claims for Minnesota Illinois class members would not have succeeded.

A payment of $1,000.00 to Plaintiff John Osick. Without Mr. Osick's service, Missouri state law claims for Missouri class members would not have succeeded.

A payment of $1,000.00 to Plaintiff Thomas Harnik. Without Mr. Harnik's service, Nebraska state law claims for Nebraska class members would not have succeeded.

A payment of $1,000.00 to Plaintiff Ryan Hagarty. Without Mr. Hagarty's service, North Dakota state law claims for North Dakota class members would not have succeeded.

A payment of $1,000.00 to Plaintiff William Fisher. Without Mr. Fisher's service, Ohio state law claims for Ohio class members would not have succeeded.

A payment of $1,000.00 to Plaintiff Richard Stenquist. Without Mr. Stenquist's service, South Dakota state law claims for South Dakota class members would not have succeeded.

A payment of $1,000.00 to Plaintiff Andrew R. Smith. Without Mr. Smith's service, Wisconsin state law claims for Wisconsin class members would not have succeeded.

### III. LEGAL ARGUMENT

#### A. The Court Should Grant Final Approval of the Class Action Settlement

The Class Action and FLSA Collective Action Settlement Agreement was negotiated at arms'-length, and the terms are favorable to all class members when compared with the potential benefits and risks of further litigation. See *Burkholder v. City of Ft. Wayne*, 750 F.Supp.2d 990, 995 (N.D. Ind. 2010). For FLSA purposes, the Court must consider "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching. Id. The following factors are to be considered:

> "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation."

*Id.*

For purposes of approving a Rule 23(b)(3) class action settlement, a class settlement must be "fair, adequate and reasonable." FRCP 23(e)(2). The Court is to act as a fiduciary to the class members when considering whether the settlement is fair and reasonable. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014). As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at *6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong*, 773 F.3d at 863). Federal courts naturally favor the settlement of class action litigation. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-889 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes") (citations omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.") (citations omitted); *see also* WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13.1 (5th ed. Supp. 2015) (noting that there is "a 'strong judicial policy in favor of class action settlement'"); *id.* at § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."). Where, as here, "the size of the class is small, the cost of notice minimal, and the issues discrete, the court may be able to determine that class certification is proper and the settlement is 'within the range of possible approval' with minimal fuss." *In re Nat'l Collegiate Athletic Ass'n*, 2016 WL 305380, at *6.

In the present case, the Class Action Settlement Agreement meets the fairness requirements for multiple reasons. First, prior to entering into the settlement, the Parties engaged in significant discovery, involving a substantial sample size group of Midwest Manufacturing employees. Each side was able to project potential damages. Plaintiffs used an expert economist to provide a projected class-wide damage range after reviewing a large representative sampling of time and pay roll records produced by Menard, Inc. This enabled the Parties to determine the

scope of potential damages and to assess the strengths and weaknesses of their respective positions.

Second, in light of the assessment of the strengths and weaknesses of their applicable positions, the settlement reached by the Parties provides a full recovery of all, class-wide unpaid wages plus some additional amounts toward liquidated damages. The parties disagreed about the likely damages if the Plaintiffs' claims were successful, but the sum pays actual damages to every class member plus additional sums toward liquidated damages, and that is if everything went perfectly for Plaintiffs in the litigation (class certification of state law claims from multiple states, significant FLSA opt-in rates, etc…). As the Court would expect, Plaintiffs' maximum or "best possible recovery" figure was premised upon 100% participation in both the Rule 23 class action and the FLSA collective action, but 100% participation is highly doubtful, particularly in the FLSA collective action.

"Courts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995) (citations omitted); *see also Reamer*, 2014 WL 6388735, at **2, 8 (granting preliminary approval of settlement that awarded one hundred percent of wages deducted and about one third of the maximum liquidated damages available under Indiana law); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (approving settlement of 20% of the best possible recovery and noting courts have approved settlements amounting to 15% and 17% of the best possible recovery) (citations omitted); *Godshall v. Franklin Mint. Co.*, No. 01-CV-6539, 2004 WL 2745890, at *5 (E.D. Pa. Dec. 1, 2004) (finding proposed settlement amount of 46% of the best possible outcome to be reasonable); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724,

14

at *2 (D.D.C. Oct. 28, 1998) (stating that an agreement securing between six and twelve percent of the potential trial recovery "seems to be within the targeted range of reasonableness").

Third, all involved would benefit from settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Adding to the reasonableness of the settlement, and to quote from the Northern District of Indiana, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)).

Finally, with respect to the reasonableness of the compromise the parties reached in this settlement, Plaintiffs would ask the Court to consider the following facts:

    a.    At the time of the settlement, a series of critical and/or dispositive motions were pending before the Court, including a Rule 12 Motion to Dismiss, a Rule 56 Motion for Partial Summary Judgment, a Motion to Compel Individual Arbitrations and a Motion to Certify a Combined Class Action and FLSA Collective Action. Moreover, the case was stayed in its entirety [Filing No. 85.], pending the U.S. Supreme Court's decision in *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016), *cert. granted*, 137 S.Ct. 809 (2017).

    b.    At the time the Court stayed the litigation on December 15, 2017, only forty-two (42) individual plaintiffs had voluntarily opted-in to the litigation.

    c.    After the parties reached a tentative settlement in March 2018, the U.S. Supreme Court ruled that companies could compel individual employees to arbitrate FLSA claims in *Epic Systems Corporation v. Lewis*, 138 S.Ct. 1612 (2018). It is likely the Court would have ordered Maurice Bradley and the remaining 41 opt in plaintiffs to individually arbitrate claims against Menard, Inc. based upon this ruling.

    d.    With respect to the parties' compromise that settled all class-wide claims for $1,500,000.00 (both state law and FLSA collective action claims) for Menard, Inc.'s Midwest Manufacturing employees (estimated to be 5,730 at the time of settlement), it is Affiant's opinion that the plaintiffs - the intended beneficiaries of this class/collective action lawsuit, recovered and will receive far more, as a group, than would be true if cases were individually arbitrated. The cost of 42 or more individual arbitrations would have been severe and could easily have cost

15

> Menard, Inc. as much or more than the $1,500,000.00 paid in the settlement, but the individual plaintiffs arbitrating individual claims would have received little of the money, as individual claims were worth, on average, less than $1,000 apiece. Most of the money spent by Menard, Inc. on individual arbitrations would have gone to arbitration fees, fees paid to individual arbitrators, travel costs, Menard, Inc.'s own attorney's fees and payment of attorney's fees to successful individual plaintiffs. The class, as a whole, benefitted greatly by the settlement and the fees and expenses of the litigation were limited significantly by this settlement.

Moreover, no one has objected to the settlement. Only 6 of the 5,555 Rule 23 class members have opted out and at least 868 potential FLSA opt in plaintiffs have turned in Claim Forms.

### B. Service Awards to Lead Plaintiffs are Reasonable and Warranted

"Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Knox v. Jones Group*, 2017 WL 3834929 *2 (S.D. Ind. Aug. 31, 2017). See also, *Espenscheid v. DirecSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing the importance of incentive awards). "Accordingly, incentive awards are commonly awarded to those who serve the interests of the class." *Knox*, 2017 WL 3834929 at *2, citing *Massiah v. MetroPlus Health Plan, Inc*., 2012 WL 5874655 *8 (E.D.N.Y. Nov. 20, 2012) (collecting cases). "In examining the reasonableness of the requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *Knox*, 2017 WL 3834929 at *2, citing *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., 2012 WL 651727 *16 (N.D. Ill. Feb. 28, 2012).

16

This $1,500,000.00 class and collective action settlement would not have been possible without Indiana Lead Plaintiffs Bradley and Edwards. Mr. Bradley was the original lead plaintiff who initiated the case. He participated at all stages in gathering information, locating witnesses, participating in planning, discovery and, ultimately, making decisions regarding the settlement. In the same way, Mr. Edwards was needed to create any Rule 23 class action claims in the first instance and agreed to serve as a Named Plaintiff when the Complaint was amended. Mr. Bradley was involuntarily terminated and could not serve as a Rule 23 Class Representative for purposes of claims under the Indiana Wage Payment Statute. The case would have only proceeded as a FLSA collective action with only Bradley involved and far fewer would have made a recovery. Mr. Edwards voluntarily quit his employment with Defendant and Edwards was willing to take the role of Rule 23 Class Representative. Similar to Bradley, Edwards actively participated in gathering information, locating witnesses, meeting with his attorney, participating in planning, discovery and, ultimately, making decisions regarding the settlement. The $10,000 service awards agreed to by the parties and preliminarily approved by the Court are well within the realm of reasonableness of similar service awards within our Circuit. See *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566 * 3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo v. Noodles & Co.*, 2016 WL 7451623 **3-4 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards). *Chesemore v. Alliance Holdings, Inc*., 2014 WL 4415919 **5, 12 (W.D. Wis. Sept. 5, 2014) ($10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions).

While the $1,000 service awards to the ten non-Indiana Lead Plaintiffs are not a huge amount of money, the service and willing participation of Neumann, Kaufman, Osick, Wittrock, Similton, Hagarty, Harnik, Fisher, Stenquist and Smith in the Rule 23 Class Action portion of the lawsuit was critical in creating and preserving state law wage claims for Midwest Manufacturing employees in Illinois, Iowa, Ohio, North Dakota, South Dakota, Missouri, Minnesota, Wisconsin, Nebraska and Michigan.  For purposes of approving agreed-upon service awards that are only $1,000 each, a District Court within our Seventh Circuit stated that $1,500 service awards are "truly nominal" and "courts in this District have recently and routinely granted $5,000 incentive awards to named plaintiffs" (in TCPA cases).  *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 239 (N.D. Ill. 2016).

Finally, incentive awards must be paid from the common fund.  *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015).  Plaintiffs request final approval of the service awards to the twelve Lead Plaintiffs.

### IV. CONCLUSION

For the reasons set forth above, Plaintiffs request that, after conducting the Final Fairness Hearing on March 5, 2019, the Court grant Final Approval of the Class Action Settlement Agreement, which was preliminarily approved on September 28, 2018 [Filing No. 115.], grant all requested attorney's fees, costs, expenses and Lead Plaintiff service awards, and order that class common funds be distributed to all participating class members.  Plaintiffs request any and all other relief just and proper in the premises.

Dated: February 19, 2019

Respectfully submitted,

HUNT, HASSLER, KONDRAS & MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr., Attorney No. 18038-84
Robert F. Hunt, Attorney No. 7889-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@huntlawfirm.net
hunt@huntlawfirm.net

BARON & BUDD, P.C.

By /s/Allen R. Vaught
Allen R. Vaught
TX Bar No. 24004966
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
avaught@baronbudd.com

THE LAW OFFICE OF ROBERT J. HUNT, LLC

By/s/Robert J. Hunt
Robert J. Hunt
Attorney No. 30686-49
3091 E. 98th St. Ste. 280
Indianapolis, IN 46280
(317) 706-1100
Facsimile: (317) 623-8503
rob@indianawagelaw.com

NILGES DRAHER LLC

By/s/Hans A. Nilges
Hans A. Nilges (0076017)
7266 Portage St., N.W.
Suite D
Massillon, Ohio 44646
Telephone:    330-470-4428
Fax:          330-754-1430
Email:        hans@ohlaborlaw.com

**ATTORNEYS FOR PLAINTIFFS**

19

## CERTIFICATE OF SERVICE

  I certify that a copy of the foregoing pleading was filed with the Court electronically on February 19, 2019. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Paul L. Bittner
paul.bittner@icemiller.com

James E. Davidson
james.davidson@icemiller.com

Michael Wukmer
michael.wukmer@icemiller.com

            /s/Robert P. Kondras, Jr.
            Robert P. Kondras, Jr.